﻿Citation Nr: AXXXXXXXX
Decision Date: 08/27/19 Archive Date: 08/27/19

DOCKET NO. 190306-3070
DATE: August 27, 2019

ORDER

Service connection for tinnitus is granted.

REMANDED

The claim of entitlement to service connection for left ear hearing loss, to include as secondary to service-connected ischemic heart disease, diabetes mellitus, diabetic nephropathy, and peripheral neuropathy of the bilateral upper and lower extremities, is remanded.

The claim of entitlement to service connection for right ear hearing loss, to include as secondary to service-connected ischemic heart disease, diabetes mellitus, diabetic nephropathy, and peripheral neuropathy of the bilateral upper and lower extremities, is remanded.

 

FINDING OF FACT

Resolving reasonable doubt in the Veteran’s favor, tinnitus had onset during service.

CONCLUSION OF LAW

The criteria for service connection for tinnitus are met. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from June 1965 to June 1969 and is in receipt of the Combat Action Ribbon. 

The rating decision on appeal was issued in October 2018. In November 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The Veteran selected the Higher-Level Review lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the February 2019 AMA rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

 

Tinnitus

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303(a) (2018). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called “nexus” requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2018).

Additionally, for certain chronic diseases with potential onset during service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. §§ 3.303(b), 3.309 (2018); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

The Veteran alleges that tinnitus began during service and has existed since that time.

In the February 2019 rating decision, the RO found that a present disability is shown and that the Veteran suffered in-service acoustic trauma, and the Board finds no evidence to refute those findings. 

The remaining issue, then is whether there is a nexus of the current disability to service. 38 C.F.R. § 3.303; Holton, 557 F.3d at 1366. Initially, the Board notes that VA found that the Veteran had tinnitus prior to service and that it was not aggravated therein. See February 2019 rating decision. However, tinnitus was not noted on entry, and the Veteran is presumed sound with regard to this disorder. 38 U.S.C. § 1111 (2012). As such, the Board’s analysis will focus solely on whether tinnitus had onset as a result of in-service noise exposure. 

At a September 2018 VA examination, the Veteran reported that he first noticed tinnitus during active duty. This statement is corroborated by September 1967 service treatment records that document the Veteran presenting with complaints of tinnitus. At that time, the Veteran’s right ear appeared to have mucous with blood. It was irrigated, and the Veteran was treated with Cortisporin. The September 2018 VA examiner noted that the Veteran’s enlistment examination showed mild to moderate hearing loss, which is evidence of acoustic damage before the military. With regard to the report of ringing during service, the examiner noted that the Veteran had an ear infection and that it was not likely this ringing was due to noise exposure. The examiner further noted that the Veteran worked for 37 years post-service in with excessive noise in an auto-mechanic shop, which was more likely the etiology for the Veteran’s current tinnitus. 

In November 2018 submission, the Veteran disagreed with the findings of the September 2018 examination, explaining that he had used hearing protection in his post-service occupation. He asserted that he did not have tinnitus prior to his military service and that it had started in service, as documented in his service treatment records. 

The Board weighs the evidence in the Veteran’s favor. On one hand, the VA examiner found that tinnitus was not related to acoustic trauma in service, explaining, in part, that post-service noise exposure contributed to the condition and that there was evidence of hearing loss prior to service. Conversely, the Veteran is competent to describe the onset of his tinnitus as first occurring during his active duty service. See Charles v. Principi, 16 Vet. App. 370, 374 (2002) (lay testimony may establish the presence of tinnitus because ringing in the ears is capable of lay observation). The Board finds the Veteran’s statements credible as there is no reason to doubt the disorder’s presence in service, particularly since an in-service record documents ringing in the Veteran’s ears. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (noting that the credibility of a witness may be impeached by a showing of interest, bias, inconsistent statements, consistency with other evidence), aff’d, 78 F.3d 604 (Fed. Cir. 1996). The Veteran is also competent to comment on tinnitus existing since service, which he has done. 

 

Further, the Veteran’s November 2018 Notice of Disagreement undermines one of main findings from the September 2018 VA examination that the Veteran’s post-service occupation caused his tinnitus, as the Veteran credibly described wearing hearing protection in his post-service occupation. 

Under these circumstances, reasonable doubt is resolved in the Veteran’s favor. As the evidence indicates that tinnitus had its onset during service, the Board finds that the criteria for service connection for tinnitus are met. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.

REASONS FOR REMAND

The Board finds that remand is required to correct a duty to assist error for the Veteran’s claim of entitlement to service connection for bilateral hearing loss that occurred prior to the Veteran’s election to participate in the modernized review system. Specifically, the Board finds that remand is required for an adequate VA examination. Where VA provides the veteran with an examination in a service connection claim, the examination must be adequate. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

Impaired hearing will be considered a disability for VA purposes when the auditory threshold in any of the frequencies of 500, 1,000, 2,000, 3,000, or 4,000 Hertz (Hz) is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies of 500, 1,000, 2,000, 3,000, or 4,000 Hz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2018). 

The Veteran asserts he has bilateral hearing loss as a result of acoustic trauma sustained during military service. The RO conceded noise exposure and a current disability for VA purposes in the February 2019 rating decision. The remaining issue is whether the current bilateral hearing loss is related to in-service acoustic trauma. Notably, the left ear and right ear hearing loss claims are analyzed under separate analyses. 

On the February 1965 enlistment examination, audiometric testing revealed right ear hearing loss for VA purposes. At 4000 Hz, the auditory threshold was 40 decibels. As correctly noted by the RO in the February 2019 rating decision, the Veteran is thus deemed to have had a right ear hearing loss disability prior to his active duty service. Under such circumstances, this claim is analyzed under 38 U.S.C. § 1153. If a preexisting disability is noted upon entry into service, then the Veteran cannot bring a claim for service connection for that disability, only a claim for service-connected aggravation of that disability. In that case, the burden falls on the Veteran to establish aggravation. 38 U.S.C. § 1153 (2012); 38 C.F.R. § 3.306 (2018). 

In contrast, regarding the left ear, where the degree of hearing loss noted on an entrance examination does not meet VA’s definition of a disability for hearing loss under 38 C.F.R. § 3.385, the claimant is entitled to the presumption of soundness. McKinney v. McDonald, 28 Vet. App. 15 (2016). The February 1965 entrance examination did not yield audiometric findings that amounted to a degree of hearing loss that meets VA’s definition of a disability. Thus, the Veteran was presumed sound on entry with regard to his left ear hearing, and the analysis for this claim will be a direct service connection analysis. 

In a September 2018 VA examination, the examiner opined that it was less likely than not that the Veteran’s bilateral ear hearing loss was caused by or a result of his military service. The examiner noted that the Veteran already had hearing loss when he entered service, and though there were no hearing thresholds recorded at separation four years later, the Veteran worked in a noisy post-service occupation for 37 years following service and hunted and shot targets prior to and after the military. The examiner explained that, due to pre-existing hearing loss, the 37 years in excessive noise due to his occupation, and the Veteran’s vascular and heart conditions that can affect hearing, it was less likely than not that the Veteran’s current hearing loss is due to military noise exposure. 

This opinion is inadequate to adjudicate this claim. As noted above in the tinnitus analysis, the Veteran has reported that he wore hearing protection in his post-service occupation as a mechanic. See November 2018 Notice of Disagreement. This undermines one of the supporting findings from the examiner’s opinion because it appears the examiner did not consider post-service hearing protection. Further, the opinion is inadequate for the left ear hearing loss because the Veteran is presumed sound with regard to any left ear hearing loss when he entered service because a disability for VA purposes was not shown in the left ear on the enlistment examination. Accordingly, an opinion relying on preexisting hearing loss is not adequate for this ear. 

Additionally, the September 2018 VA opinion raised a secondary theory of entitlement when the examiner explained that vascular and heart conditions can affect hearing. Notably, the Veteran is service-connected for ischemic heart disease, peripheral neuropathy of the upper and lower extremities, and diabetic nephropathy. Since the Veteran’s service treatment records document a hearing loss disability in the right ear, an opinion should be sought addressing whether the Veteran’s service-connected vascular and heart disabilities aggravated the Veteran’s right ear hearing loss. An opinion should also be sought as to whether the Veteran’s left ear hearing loss was caused or aggravated by his service-connected heart and vascular disabilities.

The matters are REMANDED for the following action:

Obtain an addendum opinion regarding the etiology of the Veteran’s bilateral hearing loss from a VA examiner. The entire claims file must be made available to and be reviewed by the examiner. If an examination is deemed necessary, it shall be provided. An explanation for all opinions expressed must be provided. 

(a.) The examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that the Veteran’s left ear hearing loss had onset in, or is otherwise related to, active service. 

The examiner is reminded that the Veteran is presumed sound with regard to any left ear hearing loss at the time of his enlistment into military service. The examiner must also address the Veteran’s contention that he wore hearing protection in his post-service occupation. 

(b.) The examiner must also provide an opinion whether it is at least as likely as not (50 percent or greater probability) that the left ear hearing loss is caused or aggravated by the service-connected ischemic heart disease, diabetes mellitus, peripheral neuropathy of the upper and lower extremities, or diabetic nephropathy.

The examiner should address the September 2018 VA examination findings that report that heart and vascular disorders can affect hearing. 

(c.) The examiner must provide an opinion regarding whether it is at least as likely as not (50 percent or greater probability) that the Veteran’s pre-existing right ear hearing loss was aggravated beyond its natural progression during service. 

The examiner must address the Veteran’s contention that he wore hearing protection in his post-service occupation. 

(d.) The examiner must also provide an opinion whether it is at least as likely as not (50 percent or greater probability) that the right ear hearing loss is aggravated by the service-connected ischemic heart disease, diabetes mellitus, peripheral neuropathy of the upper and lower extremities, or diabetic nephropathy.

 

The examiner should address the September 2018 VA examination findings that report that heart and vascular disorders can affect hearing. 

 

 

K. MILLIKAN

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Steve Ginski, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.